# NO. 12-22-00065-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SARAH MICHELLE DEMARET,* *APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Sarah Michelle Demaret appeals her conviction for possession of a controlled substance. In her sole issue, she contends that the trial court abused its discretion when it overruled her motion to suppress evidence. We affirm.

## BACKGROUND

Appellant was indicted for the state jail felony offense of possession of a controlled substance under penalty group two in an amount less than one gram.[1] Pursuant to a statute, the trial court also made a special finding that, at the State's request, Appellant's state jail felony offense would be prosecuted as a Class A misdemeanor.[2]

Appellant filed a motion to suppress evidence. Lindale Police Department Sergeant Carlos Flores testified at the hearing. He explained that he responded to a call at a hotel in Lindale on June 22, 2019. The occupant in Room 321 reported smelling an odor of marijuana. Sergeant Flores stated that when he arrived, he and the other responding officers detected the odor of marijuana in the elevator and the hallway. One of Room 321's occupants stated that she believed the odor emanated from Room 311 because the odor became stronger as they walked

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.116(b) (West Supp. 2022).

[2] *See* TEX. PENAL CODE ANN. § 12.44(b) (West 2019).

towards that room and a towel was stuffed in the gap between the floor and the door. Sergeant Flores unsuccessfully attempted several times to contact the occupants of Room 311 by knocking on the door and covering the peephole. While standing at the door, Sergeant Flores observed the occupants of the room remove the towel from the floor and subsequently replace it, which indicated to Sergeant Flores that the room was occupied and that they were attempting to conceal the marijuana odor.

Sergeant Flores left two officers at the door and went to the front desk to retrieve the hotel manager. The manager knocked on the door as well, and after his efforts were unsuccessful, he told the occupants that he would retrieve a key card for the room. An occupant of Room 311 finally opened the door. The female occupant opened the door just enough where she could "poke her head out." Sergeant Flores smelled an even stronger odor of marijuana emanating from the room when she opened the door. He believed that there was a possibility that the occupants were attempting to dispose of any evidence linking them to the drugs. He indicated to the occupant that he was going to enter the room, and she stepped aside and fully opened the door.

The occupant stated that Appellant, who is her cousin, smoked the marijuana and would return to the room shortly thereafter. Appellant arrived at the room and immediately admitted that the marijuana belonged to her. When asked by Sergeant Flores whether there was any more marijuana, Appellant replied that she had "under two ounces" in her purse, which was located "within her wingspan." Sergeant Flores indicated that the purse was in an area of Appellant's immediate control because she had just produced her driver's license from the purse.

The officers placed Appellant under arrest. As Sergeant Flores initiated his search of the purse incident to arrest, Appellant told him about a small baggie containing a white powdery substance that she identified as cocaine. During his search, Sergeant Flores discovered marijuana, cocaine, and Adderall prescribed to a third party. The latter substance serves as the basis for this prosecution.

After the hearing, the trial court denied Appellant's motion and issued written findings of fact and conclusions of law. Appellant thereafter entered a plea of "guilty" to the charge. Pursuant to a negotiated plea agreement, the trial court deferred a finding of guilt and placed her on deferred adjudication community supervision for eight months. This appeal followed.

2

In her sole issue, Appellant challenges the denial of her motion to suppress.

**Standard of Review**

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to the trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, but we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008); *see also Kerwick*, 393 S.W.3d at 273. We must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as here, a trial court makes findings of fact with its ruling on a motion to suppress, we view the evidence in the light most favorable to the ruling and determine whether the record supports the trial court's findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Therefore, a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). However, a trial court has no discretion in determining what the law is or applying the law to the facts. *State v. Kurtz*, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004). Thus, a failure by a trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.* We must uphold the trial court's ruling on a motion to suppress if the ruling was supported by the record and was correct under any theory of law applicable to the case. *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

**Applicable Law**

Under both the United States and Texas Constitutions, a warrantless search of either a person or property is presumed unreasonable subject to certain exceptions. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006); *Estrada v. State*,

154 S.W.3d 604, 608 n.12 (Tex. Crim. App. 2005). A criminal defendant who alleges a Fourth Amendment violation bears the burden of producing some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). A defendant meets her initial burden of proof by establishing that a search or seizure occurred without a warrant. *Id.* The burden then shifts to the state to prove that the search or seizure was nonetheless reasonable under the totality of the circumstances. *Id.* at 672-73.

A person maintains a reasonable expectation of privacy in her home. *Kyllo v. United States*, 533 U.S. 27, 34, 40, 121 S. Ct. 2038, 2043, 2046, 150 L. Ed. 2d 94 (2001); *Tilghman v. State*, 624 S.W.3d 801, 807 (Tex. Crim. App. 2021). This right has been extended to hotel guests in their rooms. *Stoner v. California*, 376 U.S. 483, 490, 84 S. Ct. 889, 893, 11 L. Ed. 2d 856 (1964); *Tilghman*, 624 S.W.3d at 807; *Moberg v. State*, 810 S.W.2d 190, 194 (Tex. Crim. App. 1991). As such, hotel staff may not consent to a law enforcement search of an occupied room in which a guest retains an expectation of privacy. *Stoner*, 376 U.S. at 490, 84 S. Ct. at 893; *Tilghman*, 624 S.W.3d at 807.

However, hotel guests lose that expectation of privacy in their room at the time their occupancy is scheduled to end or upon their eviction from the room by the hotel. *Tilghman*, 624 S.W.3d at 807. Upon hotel staff taking affirmative steps to evict a guest, control of the hotel room reverts to the hotel, and the guest loses her reasonable expectation of privacy therein. *Id.* A hotel guest who is engaging in behavior that she reasonably should know is in violation of hotel policy, even if that policy is not provided to her in writing, should also reasonably know that she may be evicted for engaging in such prohibited conduct once the hotel staff becomes aware of it. *Id.* at 810-11. In such circumstances, she can no longer contend that she maintains an objectively reasonable expectation of privacy in the room implicating Fourth Amendment concerns. *Id.* at 811. If hotel management needs assistance with carrying out an eviction of a hotel guest (for example, based on expiration of the occupancy period or for a violation of hotel policies), police may assist with facilitating the eviction, which is not considered a violation of the person's Fourth Amendment rights. *Id.* at 807; *see Voelkel v. State*, 717 S.W.2d 314, 315–16 (Tex. Crim. App. 1986).

An established exception to the warrant requirement is a search incident to arrest. *State v. Sanchez*, 538 S.W.3d 545, 551 (Tex. Crim. App. 2017). A search incident to arrest can occur before an arrest, provided: (1) the officer already had probable cause to make an arrest when the

4

search was conducted; and (2) the search occurred close in time to the formal arrest. ***Id.*** A search incident to a lawful arrest must be restricted to: (1) a search of the person or objects "immediately associated" with the person of the arrestee; or (2) a search of objects in the area within the arrestee's immediate control. ***State v. Drury***, 560 S.W.3d 752, 755 (Tex. App.—Fort Worth 2018, pet. ref'd). A purse is an item "immediately associated" with a person because it is typically carried at all times, similar to a wallet or items in a pocket. *See **Stewart v. State***, 611 S.W.2d 434, 437 (Tex. Crim. App. [Panel Op.] 1981); ***Drury***, 560 S.W.3d at 755. There is no bright-line rule for immediate association, but generally, the arrestee must have had actual physical possession of the object at or immediately before the time of arrest. ***Drury***, 560 S.W.3d at 755.

**Discussion**

Appellant contends that, even with probable cause to believe that illegal drugs were in the hotel room, the arresting officers had only the odor of marijuana, which does not by itself justify the warrantless entry into the room. *See **Turrubiate v. State***, 399 S.W.3d 147, 149 (Tex. Crim. App. 2013). While we agree with that principle, the officers here had far more information than solely the odor of marijuana, and in any event, the officers could enter the room without a warrant to assist the hotel in effectuating an eviction, which does not implicate the Fourth Amendment or Texas Constitution.

Sergeant Flores recalled that the hotel manager told him that when he came up to the room that it was a non-smoking room and he requested that the occupants leave the hotel. The manager himself unsuccessfully tried to contact the occupants. Because it was a non-smoking room, the manager audibly uttered that he would obtain a key card to enter the room and evict the occupants. Just as he left to retrieve the card, one of the occupants opened the door. Sergeant Flores then confirmed that the manager wanted the occupants out of the room. Upon arrest, Sergeant Flores allowed Appellant to settle the bill with the hotel.

The hotel rental agreement was entered into evidence, and it stated that the hotel had the right to refuse service to anyone, that the hotel was non-smoking, and one hundred percent smoke free. Defense counsel asked Sergeant Flores if he could determine what would happen under the agreement if an individual violated the smoking policy. He replied that he was unsure, but common sense would indicate to him that the individual would be "breaking the rules."

5

Here, irrespective of whether Sergeant Flores had exigent circumstances to enter the room, the record supports the theory applicable to this case as in ***Tilghman***, that once the hotel took affirmative steps to evict the tenants, even without advance notice, the control of the room reverted to the hotel and the occupants had no reasonable expectation of privacy implicating the Fourth Amendment. *See **Tilghman***, 624 S.W.3d at 807. This is especially true in light of the fact that it would be unreasonable to assume such an expectation through Appellant's misconduct of smoking marijuana in the hotel. *See **id.*** at 810-11. Accordingly, we hold that the officers could enter the room without a warrant to assist the hotel in effectuating the eviction.[3] *See **id.*** at 807.

As for the subsequent search of Appellant's purse, she immediately told Sergeant Flores she had marijuana in her purse. That admission gave him probable cause to arrest her, because an officer is authorized to arrest a person who possesses marijuana in his presence. TEX. CODE CRIM. PROC. ANN. art. 14.01 (West 2005); TEX. HEALTH & SAFETY CODE ANN. § 481.121(a) (West Supp. 2022). With an objectively valid reason to arrest her, Sergeant Flores was further authorized to conduct a search incident to arrest. ***State v. McCall***, 929 S.W.2d 601, 604 (Tex. App.—San Antonio 1996, no pet.). The search incident to arrest could lawfully include Appellant's purse, because it was in her physical possession immediately prior to her arrest and remained within arm's length throughout her dealings with Sergeant Flores. *See **Stewart***, 611 S.W.2d at 437; ***Drury***, 560 S.W.3d at 755.

Accordingly, Appellant's sole issue is overruled.[4]

---

[3] Appellant filed her motion to suppress on April 16, the trial court held a suppression hearing on April 26, and the trial court signed its findings of fact and order denying the motion to suppress on April 28. The Texas Court of Criminal Appeals delivered its opinion in ***Tilghman*** on June 23, 2021. *See **Tilghman v. State***, 624 S.W.3d 801, 801 (Tex. Crim. App. 2021). Appellant filed a motion to reconsider her earlier motion to suppress on February 22, 2022. The trial court signed its order placing Appellant on deferred adjudication community supervision on February 23.

Another court recently applied the holding in ***Tilghman*** to a case with written findings of fact and conclusions of law under similar circumstances when the opinion in ***Tilghman*** was released after the trial court made its findings and the case was pending on appeal. *See **State v. Minatra***, No. 03-20-00160-CR, 2022 WL 1787434, at *4 (Tex. App.—Austin June 2, 2022, no pet.) (mem. op., not designated for publication). As we discuss in this opinion, this is an applicable, dispositive theory of the instant case relied upon by the State and unaddressed by Appellant.

[4] Appellant relies extensively on the arresting officers' body camera exhibits. However, the trial court did not have those exhibits before it during the motion to suppress hearing. Specifically, the State did not offer the body camera exhibits. Appellant's counsel attempted to use the recordings but was unable to produce them in a form upon which the trial court could consider them.

Instead, Appellant attempted to use transcripts of the videos to assist Sergeant Flores in refreshing his recollection, rather than admitting either the videos or the transcripts as actual exhibits. The State pointed out that

## **DISPOSITION**

Having ***overruled*** Appellant's sole issue, the trial court's judgment is ***affirmed***.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered January 19, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

---

the transcripts contained inaccuracies, an assertion that went unopposed by Appellant. The trial court expressly noted in its findings of fact and conclusions of law that it did not consider the body camera exhibits in making its determination, a finding we do not disturb on appeal. Furthermore, Appellant does not offer any authority or argument in her brief that the trial court should have considered the unadmitted body camera footage. We also note that Appellant attempted to use transcripts from one of the other officer's body cameras to refresh Sergeant Flores's recollection, and to many of defense counsel's questions based on the transcript, Sergeant Flores could not recall. In summary, we do not consider the body camera exhibits or the transcripts thereof in our analysis.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 19, 2023**

**NO. 12-22-00065-CR**

**SARAH MICHELLE DEMARET,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court
of Smith County, Texas (Tr.Ct.No. 114-0797-20)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*